UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JERRY MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-104-TAB-DFH |
| | ) | |
| WILCOX PROFESSIONAL | ) | |
| SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.      Introduction.**

Jerry Martin brings this retaliation claim against Wilcox Professional Services LLC for being terminated after reporting alleged sexual harassment to his boss at Wilcox. Wilcox moves for summary judgment, arguing that Martin cannot establish a prima facie case of retaliation, and even if he could, Wilcox can show that it fired him for other reasons. Disputed facts make summary judgment inappropriate.

**II.     Statement of Facts.**

Jerry Martin began working for Wilcox, a Michigan land surveying and mapping services company, on November 13, 2006. Martin worked as a Computer Aided Drafting and Design ("CADD") technician in Wilcox's Indianapolis office, which was run by Ramez (Ron) Butros, the Vice President of Indiana Operations. The Indianapolis office consisted of Butros, Martin, several other CADD technicians, administrative staff, and three project coordinators. Martin was directed by the project coordinators, but for personnel purposes Butros and management from Michigan were his superiors. In addition to his responsibilities as a CADD technician,

Martin also updated Wilcox's computer software.  Wilcox did not formally evaluate Martin's performance prior to the events at issue.  However, Martin asserts his work met Wilcox's expectations because he was approved for paid time off prior to completing his first ninety days of employment, which is an exception to company policy.

Beginning December 4, 2006, Martin believed he was being sexually harassed by one of the project coordinators, Kim Pitcher.  On Friday, January 12, 2007, Martin was asked to help complete an assignment over the weekend pertaining to State Road 57 ("the SR 57 project").  He agreed to help, but asked to work from home.  Wilcox did not have any written prohibition against working from home.  [Docket No. 45-2, Baerman Dep. at 68.]  Project coordinator Mike Koslow agreed to let Martin work from home on one of his projects.  However, Pitcher told him she needed him to come to the office to do the work for the SR 57 project and asked him when he would be coming in.  She further said to him, "[I]f no one is here with us, then maybe we can have some extra fun."  [Docket No. 45 at 14; Docket No. 45-4, Martin Aff. at ¶ 9.]  He told her he did not know when he would be in.

Martin went into the office the next day around 9 p.m. and stayed for about thirty minutes.  He uploaded the files he needed and worked on the files at home that night into the early morning and the next day.  Martin did not return to the office until Monday morning.  He saved work he had done at home to the office computer, but the work was corrupted.  Martin provided a time sheet stating that he worked four hours on Saturday and four hours on Sunday.  Pitcher asked whether he had worked in the office over the weekend.  He told her he did, but that the work product did not save correctly so would need to be redone.  Martin lied to Pitcher about where he did the work so as not to upset her for not taking her up on her offer to come in

2

and "have some extra fun." Pitcher investigated the company records and found that Martin had come in Saturday evening only for about a half hour. Pitcher reported the hours Martin claimed to have worked, the company records, and the lack of work product to Butros on January 15, 2007.

On January 16, 2007, Butros asked Martin about the hours. At first Martin lied and said he had worked the hours in the office. He then retracted this statement and said he had worked the hours at home because he had been uncomfortable working in the office. To further explain, on January 23, Martin submitted to Butros a letter he had drafted alleging inappropriate behavior by Pitcher toward him. Butros was very upset with Martin when he received the letter, and ordered Martin to return to his cubicle. That day, after discussing the letter further with Butros, Martin believed his job was in jeopardy because of the complaint. Therefore, Martin retracted the letter, writing at the bottom of it, "I Jerry Martin, withdraw this letter for the best interest of Wilcox and myself." [Docket No. 45-4, Martin Aff., Ex. C.]

Wilcox nonetheless conducted an investigation into the sexual harassment allegation. As part of the investigation, Butros prepared a memo dated January 23, 2007. Also part of the investigation, on February 2, 2007, Martin met with Paul Baerman, the Regional Vice President of Operations, and Penny Mosley of the human resources department. Prior to the meeting with Baerman and Mosley, Butros told Martin that if he downplayed the sexual harassment complaint, he would not lose his job. Martin did so, but on February 20, 2007, Butros fired Martin.

Wilcox provides additional facts that Martin cannot confirm or deny. Wilcox states that "[o]n January 19, 2007, Baerman learned from Butros's investigation that Martin lied about working in the office the weekend of January 13 and 14, 2007, and that no computer records

3

existed to support Martin's claim that he worked on the SR 57 project either day." [Docket No. 40 at 19.] Wilcox further represents that "[b]ased on Butros's investigation and Baerman's findings, Baerman decided to terminate Martin on January [1]9, 2007, four days before Martin complain[ed] to Wilcox about Pitcher's alleged inappropriate behavior." [*Id*.][1] In support of these points, Wilcox provides deposition testimony and affidavits submitted by Baerman as well as by Aaron Stahl, who had worked in information technology for Wilcox. [*Id*.; Docket No. 41, Ex. K at ¶ 2.]

### III. Discussion.

#### A. Relevant and Admissible Facts.

As an initial matter, the parties contest what facts are relevant and admissible for this motion. Martin moves to strike a January 23, 2007, memo created by Butros and submitted by Wilcox. Martin also raises an issue of potential conflict between an answer given by Wilcox in its interrogatories and a statement provided in an affidavit by one of Wilcox's employees. Wilcox, on the other hand, contends in its reply that Martin's list of disputed facts fails to conform with Local Rule 56.1 and that they are immaterial or otherwise explainable.

#### 1. The January 23, 2007, memo.

Butros created a memo on January 23, 2007, describing the events that occurred that day with Martin. Martin requests that this memo be stricken as inadmissible hearsay. He points out that Baerman and Mosley have no personal knowledge of the events occurring between Martin and Butros and that any reference to those events that is based on the statements of Butros is

---

[1] Wilcox's brief says January 29 rather than January 19. Wilcox indicates in its reply brief that this is an error and that it should have read January 19. [Docket No. 48 at 5, n.2.]

inadmissible hearsay. Martin argues that this memo is not admissible under the business records exception because it was not made in the ordinary course of business. He further argues that the memo is without proper foundation and lacks trustworthiness. However, Martin asserts that he can use the memo for the purpose of attacking Wilcox's motive and credibility because of the existence of the memo, but not for proof of the truth of any of the statements contained therein.

Wilcox argues that the memo should be allowed as the statements contained therein are not offered for the truth of the matter asserted but to show the effect on the listener. In particular, "the memo is cited to show the background steps to the investigation or to explain the basis of a belief Wilcox (*vis a vis* Baerman) had about the events and the effect the events had on Baerman." [Docket No. 48 at 3.]

Martin's objection is overruled. The memo may be used for many purposes other than to prove the truth of the matters asserted. To the extent that Wilcox offers the memo as proof of the truth of the statements contained therein, the Court accepts Martin's version of the facts—so long as reasonable—as true for purposes of this motion. *See Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

### 2. The date Wilcox decided to terminate Martin.

Baerman states in his affidavit attached to Wilcox's motion for summary judgment that he decided to fire Martin on January 19, 2007, four days before Martin made his sexual harassment complaint. Accordingly, Wilcox argues that the decision to terminate Martin could not have been made in retaliation to Martin's complaint.

Martin has no direct evidence to contradict Baerman's sworn testimony that Baerman had decided to terminate Martin prior to Martin making his complaint. But Martin argues that the

5

context calls into question the veracity of Baerman's claim about his alleged decision to terminate Martin on January 19.  First, in response to interrogatories submitted by Martin, Wilcox stated that Baerman made his final decision to terminate Martin on February 12, 2007.  Martin points out the discrepancy between this earlier answer provided by Wilcox and the later answer provided by Baerman in his affidavit, which Martin suggests Baerman may have given to bolster Wilcox's legal position.  Furthermore, Martin was not actually terminated until February 20, 2007.  If the decision to fire Martin was made on January 19, Martin questions the long delay in firing him unless the final decision had not actually been made yet.  Wilcox explains that the discrepancy can be reconciled in that Baerman made both an "initial decision" and a "final decision" to terminate Martin.  [Docket No. 48 at 12.]

     For purposes of this motion, the Court must consider February 12, 2007, as the date Baerman decided to terminate Martin.  Importantly, the only evidence that Wilcox offers that it decided to fire Martin on January 19 is the after-the-fact affidavit and deposition testimony of Baerman.  No paper record was made of the January 19 decision at the time it allegedly was made.  If such evidence alone were sufficient to dispose of a case, defendants could easily avoid legitimate claims against them by using either dishonest testimony or honest testimony based (conveniently) on misremembered facts.  Relying on such evidence to dispose of this case at summary judgment is particularly troublesome given that there was an "initial decision" and a "final decision," which calls into question exactly what was decided by the "initial decision."

     Moreover, Wilcox did not fire Martin until nearly a month after he made his complaint. This delay creates two problems for Wilcox.   First, Martin's complaint was naturally in Wilcox's purview as it made its "final decision."  Second, Wilcox's summary judgment brief

repeatedly characterizes Martin as a liar who also engaged in time sheet fraud.  If Wilcox truly believed the accuracy of this characterization, it is difficult to square this with a nearly month-long delay in Martin's termination.  Of course, these problems do not necessarily mean that Wilcox's reason for firing Martin was because of Martin's complaint.  But these discrepancies preclude a simple disposition of the case—that as a matter of law the decision to fire Martin could not have been retaliatory because it was made prior to any alleged protected activity.  Reasonably viewing the facts most favorably toward Martin, for purposes of this motion the final and effectual decision to fire Martin was made after Martin complained of sexual harassment.

### 3. Other disputed facts.

Wilcox's summary judgment brief provides sixteen pages of background facts but only three pages of material facts not in dispute.  In his response, Martin provides (somewhat confusingly) a section of undisputed facts that preclude summary judgment and a section of disputed facts that preclude summary judgment.  Wilcox contends that Martin's list of disputed facts fails to conform to Local Rule 56.1 and that these facts are also immaterial in that they respond to Wilcox's background facts, not its list of disputed facts.

Where in Wilcox's brief the facts are located makes no difference if the facts are material and are disputed.  Wilcox cannot simply put all the disputed facts into its background section and call them immaterial in an attempt to obtain summary judgment.  For purposes of this motion, the Court considers all facts it deems relevant—whether or not ultimately material—in favor of Martin, if supported by evidence.  Presumably most of the facts Wilcox included in its brief are at least relevant.  There is no need to determine whether each fact is material.  If the facts supported by evidence construed favorably to Martin support a claim, then at least some of the

7

facts in dispute are material. *See Jenkins v Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("[F]acts which are material [are] 'facts that might affect the outcome of the suit under the governing law' . . . .") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). On the other hand, if all of the facts favorable to Martin still do not support a claim, then summary judgment is appropriate and any of the facts in dispute are obviously not material.

### B. Martin's Retaliation Claim.

A retaliation claim under Title VII may be established either under the direct method or the indirect method. *Magyar v. St. Joseph Reg'l Med. Ctr.,* 544 F.3d 766, 770 (7th Cir. 2008). Martin argues he can establish a retaliation claim under both. To establish a prima facie case under the direct method, the claimant must demonstrate direct evidence of statutorily protected activity, adverse employment action, and a causal connection between the two. *Id*.

Wilcox argues that Martin cannot establish a prima facie case under the direct method for two reasons: he never engaged in protected activity and he cannot establish a connection between adverse employment action and the alleged protected activity. Wilcox contends that Martin failed to engage in protected activity because Martin withdrew his complaint and lied to Baerman and Mosely throughout their investigation of the complaint, which "shows that his continued engagement in the process was in bad faith." [Docket No. 40 at 27.] This dishonesty, Wilcox contends, "fatally undermines his retaliation claim." [*Id*. (citing *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890 (7th Cir. 2004)).] Wilcox further argues that Martin cannot demonstrate that his complaint is causally connected to his termination since Wilcox made the decision to terminate Martin on January 19, four days prior to Martin's complaint, because of time sheet fraud.

Martin responds that his complaint was protected activity. Martin says that when he made the complaint, he believed he was opposing unlawful activity. Martin says that the withdrawal of his letter and any deception during the investigation process was the result of pressure from his boss Butros, who led him to believe his job was in jeopardy because of his complaint. The adverse employment action is Martin's termination. Martin argues that the close temporal proximity of his complaint and his termination is evidence of a causal link: he complained on January 23, his complaint was investigated between February 2 and 6, and he was terminated on February 20. [Docket No. 45 at 25 (citing *Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004)).] Martin further points out that the only evidence that the decision to terminate Martin was made prior to his complaint is Baerman's affidavit.

Whether Martin engaged in protected activity is disputed. Wilcox's argument that Martin's dishonesty during the investigation process precludes his complaint from being protected activity depends on whose version of the facts the jury believes. If the jury believes Martin's claim that any inconsistencies in his story throughout the investigation process are the result of Butros telling him to "downplay" his complaint regarding Pitcher, such evidence may support Martin's retaliation claim. At this stage, Martin's version must be accepted.

The remaining question is whether there is a causal link between the alleged protected activity and the firing. Wilcox's argument that a causal link is impossible because the decision to fire Martin was made prior to Martin's complaint cannot be accepted for summary judgment purposes because, as discussed earlier, the date of the firing decision is disputed. However, Martin's argument that there is a causal link is somewhat troubling. Martin quotes *Lang v. Ill. Dep't of Children & Family Servs.* for the proposition that "[c]lose temporal proximity provides

9

evidence of causation and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link," 361 F.3d 416, 419 (7th Cir. 2004) (citation omitted), but he then contends that the close proximity of Martin's complaint and termination "is, on its face and without more, evidence of a causal link between the protected activity and the termination." [Docket No. 45 at 25.] More is needed. *See Burks v. Wis. DOT*, 464 F.3d 744, 759 n.17 (7th Cir. 2006) (distinguishing *Lang*—Lang had a five-year positive track record prior to his first negative job performance review occurring in the same month as his racial discrimination complaint, whereas Burks had worked for the DOT for less than one year and was still in her probationary period; thus in *Lang*, the employee showed more evidence than just temporal proximity).

    Despite Martin's incorrect statement of the law, he does provide additional evidence and argument elsewhere in his brief that supports a causal link. Martin's withdrawn complaint poses an inference that the complaint was not well-received. Indeed, Martin's handwritten statement withdrawing the letter stated doing so was in Martin's "best interest." [Docket No. 45-4, Martin Aff., Ex. C.] Martin's affidavit testimony supports this explanation for the withdrawal. Also, the accusation against Martin of time sheet fraud—which is Wilcox's alleged reason for its "initial decision" to fire Martin—was made by the alleged harasser. Finally, Martin alleges that Butros instructed him to downplay the harassment allegations during the investigation with Baerman and Mosely in order to keep his job, from which a trier of fact could infer that Martin's complaint put his job into jeopardy. None of this evidence is a direct admission by Wilcox of retaliation, but if believed, it could establish such an intent. *See Culver v. Gorman & Co.*, 416 F.3d 540, 545-46 (7th Cir. 2005) ("[C]ircumstantial evidence can establish a causal link if the

10

trier of fact can *infer* intentional discrimination."). Thus, Martin has established a prima facie case.

However, Wilcox has the opportunity to present "unrebutted evidence that [it] would have taken the adverse employment action against the plaintiff even if [it] had had no retaliatory motive." *Bernier v. Morningstar*, 495 F.3d 369, 375 (7th Cir. 2007) (quoting *Stone v. City of Indianapolis Pub. Utils.*, 281 F.3d 640, 644 (7th Cir. 2002)). The evidence Wilcox offers is: "[Martin's] lies and time sheet falsification." [Docket No. 40 at 29.]

Whether Martin falsified his time sheet is in dispute. Whether Wilcox believed Martin falsified his time sheet and this was the reason for Martin's termination is also an open question: it is only supported by after-the-fact statements of intention by the alleged harasser and Wilcox's decision-makers. The fact that Martin lied to Pitcher and Butros about where he performed the work is uncontested (purportedly to avoid the retaliation Martin claims he ultimately experienced once he gave the truth). But Wilcox's proof that these lies were the basis of Martin's termination again consists solely of after-the-fact reports and statements. These statements are rebutted by other contextual evidence: Martin's withdrawal of his complaint, the late termination date, and Martin's testimony that Butros was upset by his complaint and linked Martin's continued employment with Wilcox to Martin downplaying his complaint during the company's investigation.

Had Wilcox made any record, prior to Martin's complaint of harassment, that it was investigating Martin for time sheet fraud or lying, Wilcox's summary judgment arguments would prove much more forceful. However, Wilcox has offered only after-the-fact documentation and sworn statements by those people involved in firing him. Thus, this case essentially boils down

to which party's version of the story a jury finds more believable.  Given Martin's admission that he did not tell the truth, he may find it difficult to convince a jury that his version is more believable than Wilcox's version.  However, at the summary judgment stage Martin gets the benefit of having disputed facts resolved in his favor.  As a result, summary judgment is not appropriate.

Martin also argues that he can establish a claim under the indirect method of proof. Because the Court determines that there is a triable issue under the direct method of proof, it need not analyze the issue under the indirect method since the issue at trial will simply be whether Martin "suffered retaliation because of protected activity." *See Schobert v. Ill. DOT*, 304 F.3d 725, 732 (7th Cir. 2002); *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994) ("[The *McDonnell Douglas*] burden-shifting model applies to pretrial proceedings, not to the jury's evaluation of evidence at trial.").

### IV.    Conclusion.

Wilcox's motion for summary judgment [Docket No. 39] is denied.  This cause remains set for jury trial beginning on August 25, 2009.

Dated:  05/29/2009

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Debra J. Brooks
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
debra.brooks@odnss.com

Matthew S. Effland
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
matthew.effland@odnss.com

Steven Sams
STEVEN SAMS, P.C.
ssams@smithwade.com